IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Joel Clay Bracken, | ) | |
| | ) | Civil Action No. 6:13-1983-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Fannie Mae Consumer Resource | ) | |
| Center Inc., *also known as* Fannie Mae, | ) | |
| *also known as* Federal National Mortgage | ) | |
| Association, *also known as* FNMA | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Joel Clay Bracken ("Bracken"), the plaintiff, proceeding *pro se*, brought this suit against the Federal National Mortgage Association ("Fannie Mae"), alleging that Fannie Mae violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*, by obtaining his consumer report,[1] without his permission, on five different occasions.[2] (ECF No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 73.02(B)(2)(g), D.S.C., pre-trial matters have been referred to a magistrate judge. This case is now before the court on the magistrate judge's Report and Recommendation ("Report"), recommending that the court deny Bracken's amended *in forma pauperis* ("IFP") application and requiring him to submit the filing fee. (ECF No. 85). Bracken timely objected to the Report. (ECF No. 89). Also before the court is Fannie Mae's motion for summary judgment. (ECF No. 64). The parties have fully briefed the motion.[3] For the reasons

---

[1] "Consumer report" and "credit report" will be used interchangeably to refer to the same type of document.
[2] Although Bracken states in his memorandum in opposition of summary judgment that Fannie Mae obtained his Equifax credit report on four separate dates, (ECF No. 80, p. 3), in his complaint (ECF No. 1, pp. 5-6) he states that Fannie Mae accessed his credit report on five different occasions.
[3] Bracken also filed an affidavit in opposition to Defendant's motion for summary judgment. (ECF No. 88). In his affidavit, however, he merely restates his arguments raised in his memorandum in opposition. *Compare* (ECF No. 88) *with* (ECF No. 80).

that follow, the court grants the defendant's motion for summary judgment, and declines to adopt the magistrate judge's recommendation regarding Bracken's IFP status.

## I. Background

Bracken purchased land located at 3313 Lanewood Drive, Greenville, South Carolina 29607, in 2002 from Conseco Finance Servicing Corporation. (ECF No. 80, p. 4). To finance the purchase, Bracken borrowed $95,500 from Coastal Mortgage Services, Inc. (ECF No. 80, p. 4). Fannie Mae was not a party to either the land purchase contract or the financing contract. (ECF No. 80).

In October 2009, Bracken defaulted on the note.[4] The property is currently in foreclosure proceedings in Greenville County. (ECF No. 84-1). Fannie Mae obtained Bracken's credit report from Equifax on December 27, 2011, March 27, 2012, June 26, 2012, December 25, 2012, and June 25, 2013.[5] (ECF No. 1-2, p. 1). Bracken never consented to nor gave permission directly to Fannie Mae to obtain his credit report nor did the parties ever directly interact. (ECF No. 1-2, p. 1).

## II. Motion for Summary Judgment

### A.     Legal Standard

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence

---

[4] Bracken denies in his memorandum in opposition to summary judgment that he is in default on the note, stating that a trial is necessary because of this "disputed fact." (ECF No. 80, pp. 8, 9, 10). The court, however, takes judicial notice of another pending case filed in federal court by Bracken concerning the same property. *See Bracken v. Bank of America*, C/A No. 6:14-cv-01814, at ECF No. 21 (filed May 6, 2014). In that action, he states in his memorandum in opposition to defendant's motion to dismiss: "Plaintiff [(Bracken)] has been in default of [the Coastal Mortgage Services] loan since October 1, 2009." *See* (ECF No. 84, p. 2-3) (informing the court of the Bracken's contradictory statement in the other action).

[5] After the motion for summary judgment was fully briefed, Bracken moved to amend his complaint because Fannie Mae allegedly accessed his consumer report in June 2014. (ECF No. 91). Because the court grants summary judgment in favor of Fannie Mae, this motion is moot.

2

is such that a reasonable jury could return a verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law. *Id*.

"The party moving for summary judgment has the [initial] burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992). Thereafter, the party opposing summary judgment must come forth with "sufficient evidence supporting the claimed factual dispute," and cannot "rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 247. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *see also Catawba Indian Tribe of S.C.*, 978 F.2d at 1339 ("The non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 459 (4th Cir. 1989) (stating that the plaintiff "presented no evidence to support her claim other than her own assertions" and set against the documentation, "no reasonable trier of fact could" find for her); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."). In sum, "[w]here the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co*, 475 U.S. at 587 (*Cities Serv. Co.*, 391 U.S. at 289)).

**B.    Discussion**

Bracken argues that Fannie Mae violated his privacy rights under the FCRA by obtaining Equifax credit reports without his permission and without a permissible purpose.  (ECF No. 1, p. 5).

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy."  *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). Although the two goals may have tension, Congress permitted the furnishing of credit reports because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers."  15 U.S.C. § 1681(a)(3).  To protect consumers, the FCRA sought to have "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681(b).

In addition to regulating and imposing liability on consumer reporting agencies, the FCRA also protects consumers from any person who receives a consumer report for an improper purpose.  15 U.S.C. § 1681b(f).  The FCRA limits access to consumer reports for only certain "permissible purposes."  *See* 15 U.S.C. § 1681b.  One of the permissible grounds states that a

> consumer reporting agency may furnish a consumer report . . . [t]o a person which it has reason to believe (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.

15 U.S.C. § 1681b(a)(3)(A). The FCRA creates civil liability for willful or negligent noncompliance with its provision. 15 U.S.C. §§ 1681n, 1681o. "To prove willfulness under the [FCRA, Bracken] must 'show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer.'" *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 900 (4th Cir. 2003) (quoting *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 418 (4th Cir. 2001)).

Bracken makes two types of arguments as to why the court should not grant summary judgment.[6] First, Bracken argues that an entity in the position of Fannie Mae cannot avail itself to the permissible purposes in 15 U.S.C. § 1681b. Second, Bracken argues that Fannie Mae, itself, cannot claim that it had a permissible purpose for obtaining his consumer report because it is not the owner of the note and mortgage.

### i.    Permissible Purposes

Bracken argues that an entity in Fannie Mae's situation cannot avail itself to the permissible purposes of 15 U.S.C. § 1681b because only consumer reporting agencies can claim a permissible purpose, and even if non-consumer reporting agencies could claim a permissible purpose, only those entities that directly interacted with the consumer could allege a permissible purpose. (ECF No. 80-1, p. 11-14). Section 1681b(a) states, in pertinent part:

> Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
>> (1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.
>> (2) In accordance with the written instructions of the consumer to whom it relates.
>> (3) To a person which it has reason to believe—

---

[6] Because Bracken is proceeding *pro se* in this matter, the court has liberally construed his arguments.

> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . .

15 U.S.C. § 1681b(a).

Bracken first argues that only consumer reporting agencies can avail themselves to the exception because the statutory text applies only to them and that Fannie Mae is not a consumer reporting agency.  (ECF No. 80-1, p. 13-14).  Fannie Mae is not a consumer reporting agency under the FCRA.

Although Fannie Mae is not a consumer reporting agency, Bracken is incorrect in his assertion that a creditor or a debt collector cannot avail itself to this provision.  Section 1681b(f) states, in pertinent part, that: "[a] person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."  Person is defined as: "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b).  Fannie Mae is a person under the definition.  Because Section 1681b(f) states that a "person" must have an authorized purpose to obtain a consumer report and because Section 1681b(a) defines what an authorized purpose is under the statute, Fannie Mae as a "person" can claim a permissible purpose.  *See Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 720 n.13 (E.D. Va. 2005) (stating that Section 1681b(f) makes Section 1681b applicable to non-consumer reporting agencies).  Moreover, the Fourth Circuit has expressly stated that users of consumer reports must comply with Section 1681b.  *Yohay v. City of Alexandria Emps. Credit Union*, 827 F.2d 967, 972 (4th Cir. 1987).  It would be an anomalous result if an entity was required to comply with § 1681b, yet the entity could not claim that it had a permissible purpose under § 1681b.  *See Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269,

1275-76 (D. Md. 1996). Accordingly, the court determines that non-consumer reporting agencies can avail themselves to Section 1681b(a). *See, e.g.*, *Huertas v. Galaxy Asset Mngmt*, 641 F.3d 28 (3d Cir. 2011); *Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046-47 (7th Cir. 2005).

Bracken next argues that the only creditors who can avail themselves to this provision are "creditors who become so by consent of the consumer debtor and who are seeking to collect on a personal credit card or from a personal savings, checking or other type of bank account." (ECF No. 80, p. 12). He argues that the "[c]ollection efforts must be related to 'an account of . . . the consumer," which evidences a requirement that the consumer consent to the account. (ECF No. 80, p. 12).

In *Stergiopoulos*, 427 F.3d 1043, the Seventh Circuit considered a similar argument made by a purchaser of a vehicle against a finance company. In that case, the car dealership entered into retail installment contracts ("RICs") with the purchasers of cars, including the plaintiffs, and then sought to sell the RICs to finance companies.[7] *Id.* at 1044. First Midwest Rancorp was one of those finance companies, and before deciding to purchase the plaintiffs' RICs,[8] it obtained the plaintiffs' credit reports. *Id.* It then refused to purchase the RICs. *Id.* The plaintiffs brought

---

[7] The Seventh Circuit acknowledged that the plaintiffs were calling into question a "common scenario" in car dealership finance. 427 F.3d at 1044. The court stated that: "Dealers routinely attempt to assign tentative financing arrangements to lenders, and those lenders often rely on a consumer's credit report to determine whether the deal is worth taking. The question before us is whether, despite its routine nature, this practice is legal." *Id.* The home mortgage industry, much like the car dealership industry, has a routine process of lenders selling notes and mortgages after the parties enter into them. Indeed, Bracken signed a deed of trust assigning the mortgage and note to Mortgage Electronic Registration Systems, Inc. ("MERS"). (ECF No. 64-4). This system depends on being able to calculate the risk of the "investment", and to do so, the potential purchaser may need access to the credit information of the borrower. *See, e.g.*, Beau Phillips, *MERS: The Mortgage Electronic Registration System*, 63 Consumer Fin. L.Q. Rep. 262, 262-64 (2009). Bracken attempts to have this court potentially declare that system illegal by holding that in order for a lender to access the consumer reports of a borrower, it must be the lender that directly dealt with the borrower or have received the borrower's permission. Perhaps it would be best practice for lenders to include language in the note that future lenders may request consumer reports, but that is not required. *See Stergiopoulos*, 427 F.3d at 1047 ("While it may be a better practice for car dealers explicitly to inform their customers that unknown third-party lenders might request the customers' credit reports, we are not convinced that a failure to do so violates the FCRA as it is now written.").

[8] This case, unlike the case currently before the court, concerned the portion of § 1681b(a)(3)(A) that deals with extension of credit.

suit under the FCRA, arguing—as Bracken does here—that "First Midwest was not authorized to receive the plaintiffs' credit reports under [the FCRA] because no 'credit transaction involving the consumer' existed between the plaintiffs and First Midwest." *Id.* at 1046. The Seventh Circuit stated that "the statute does not require that the consumers expressly approve each request for a report," and all that the statute requires is "that the entity . . . be engaged in a credit transaction in which the consumer is participating." *Id.* at 1046-47.

The court finds the Seventh Circuit's reasoning persuasive. Bracken admits that he voluntarily signed the note and mortgage with Coastal Mortgage Services. (ECF No. 1). Thus, he consented to the initial transaction. Similar to how in *Stergiopoulos* the plaintiffs had no direct contact with the entity that obtained their credit report, *id.* at 1044-45, here Fannie Mae did not have any direct contact with Bracken. (ECF No. 1-2, p. 1). And much like in *Stergiopoulos* where First Midwest became involved in the transaction because of actions of the other party to the contract, *id.*, in this case, Fannie Mae became involved in the transaction because of the actions of the lender, not Bracken.

Bracken cites to *Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792 (9th Cir. 2007),[9] to support his argument that an entity cannot claim a permissible purpose under § 1681b(a) unless it was the original creditor. In *Pintos*, police officers had Pintos's vehicle towed; after Pintos did not pay the towing company, it obtained a lien on the vehicle. 504 F.3d at 796. The towing company then transferred the lien to Pacific Creditors Association ("PCA"), a collection agency. *Id.* at 796-97. PCA obtained a consumer report to aid in its collection of the debt. *Id.* at 797. The Ninth Circuit held that PCA could not claim a permissible purpose under Section 1681b(a)(3)(A) because there was not a "credit transaction." *Id.* at 798-99. The court reasoned that a "'credit

---

[9] *Opinion withdrawn and superseded by*, 565 F.3d 1106 (9th Cir. 2009), *opinion amended and superseded on denial of rehearing by*, 605 F.3d 665 (9th Cir. 2010).

transaction' is a transaction in which the consumer directly participates and voluntarily seeks credit." *Id.* at 798. The court further stated that once "[a] consumer . . . chooses to initiate a credit transaction[, he] implicitly consents to the release of his credit report for related purposes." *Id.* at 799.

The court finds that *Pintos* does not support Bracken's argument. Unlike in *Pintos* where "the debt arose by statute when the lien sale price of her vehicle failed to cover the towing and impound charges" and Pintos "never sought to have her vehicle towed," *id.* at 799, here, Bracken voluntarily sought a loan from Coastal Mortgage Services and thus "chose to initiate a credit transaction." (ECF No. 80-2). Accordingly, he "implicitly consent[ed] to the release of his credit report for related purposes." *Id.* This interpretation of *Pintos* is further supported by the fact that the Ninth Circuit expressly relied on the Seventh Circuit's decision in *Stergiopoulos*. *Id.* at 798-99. Therefore, the court finds that an entity like Fannie Mae can avail itself to the benefits of Section 1681b(a)(3)(A).

## ii.  Fannie Mae can Avail Itself to the Provision

Bracken's next argument is that even if an entity like Fannie Mae could claim protection under FCRA, Fannie Mae, in this case, cannot because Fannie Mae is not the owner of the note. (ECF No. 80, p. 4-11). Under the FCRA, Fannie Mae could obtain a consumer report if it "intend[ed] to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . review or collection of an account of, the consumer." *Id.*

Fannie Mae argues that, as owner of the note and mortgage, it rightfully could obtain a copy of Bracken's consumer report once he defaulted on the note. (ECF No. 64, p. 5). In support, Fannie Mae has attached the note, mortgage, an affidavit of John Curcio ("Curcio"), an

AVP[10] for Fannie Mae, and its answers to discovery requests stating it owns the note. (ECF No. 64). In his affidavit, Curcio states that Fannie Mae became the owner of the Note and Mortgage in 2003. (ECF No. 64-6, p. 3). He also explains that Fannie Mae contracts with other banks to "service the loan." (ECF No. 64-6, p. 3). He asserts that Fannie Mae obtains and reviews credit reports of its borrowers when a loan becomes delinquent, for quality control purposes, and to provide an array of loss mitigation and foreclosure avoidance options. (ECF No. 64-6, p. 3). He states that Bracken became delinquent in September 2009.[11] (ECF No. 64-6, p. 4). In addition, Fannie Mae attached screenshots of Fannie Mae's ownership of the note on the property to the affidavit, which Curcio confirms.[12] (ECF No. 64-6). Curcio also states that Fannie Mae has a website that provides the general public with the ability to determine whether a mortgage loan is owned by Fannie Mae. (ECF No. 64-6, pp. 3-4).

Moreover, Fannie Mae argues that under South Carolina law, if the loan was "owned, securitized, or guaranteed" by Fannie Mae or Freddie Mac, the mortgage servicer would be required to partake in foreclosure mitigation before a foreclosure action could be instituted or sold. *See In re Mortg. Foreclosure Actions*, 720 S.E.2d 908 (S.C. 2011) (requiring foreclosure forbearance prior to instituting a foreclosure action or staying of pending foreclosure actions); *Mortg. Foreclosures & Home Affordable Modification Program*, 2009-05-22-01 (S.C. Supr. Ct. May 22, 2009) (making the Home Affordable Modification Program applicable to loans "owed, securitized, or guaranteed" by Fannie Mae or Freddie Mac). In the foreclosure action, BAC

---

[10] Fannie Mae did not define what AVP stands for. Presumably, it means "assistant vice president."

[11] Bracken claims that he became delinquent on the note on October 1, 2009. *See supra* note 4. The court finds that the distinction between dates is irrelevant to the underlying issue, which is whether Fannie Mae could obtain consumer reports on the dates in question. *See Anderson*, 477 U.S. at 247 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[12] Bracken's Experian credit report that he provided in his other case, *Bracken v. Bank of America*, C/A No. 6:14-cv-01814, at ECF Nos. 1-8 and 1-9, has the same loan number for the mortgage as provided on the screenshot by Fannie Mae, further supplying documentary proof of ownership, and his Equifax credit report that he provided in that case also states that the Bank of America loan is a "Fannie Mae account." *See* (ECF No. 84, p. 3) (informing the court of the identification number and information in Bracken's other suit).

Home Loans Servicing LP and Bracken engaged in foreclosure intervention and forbearance. (ECF No. 84-1).  Accordingly, Fannie Mae has met its initial burden for summary judgment.  *See Catawba Indian Tribe of S.C.*, 978 F.2d at 1339 ("The party moving for summary judgment has the [initial] burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.").

In opposition to the motion for summary judgment, Bracken has made many allegations about how Fannie Mae has failed to prove it owns the note and mortgage.  (ECF No. 80-1). Bracken argues: (1) the note that Fannie Mae introduced was altered;[13] (2) Fannie Mae failed to authenticate the chain of ownership of his account; (3) Fannie Mae failed to authenticate who it purchased the account from; (4) Fannie Mae failed to authenticate the precise amount due on the debt and that Bracken is in default on the note[14]; (5) Fannie Mae servicers have claimed ownership to Bracken's account; (6) Fannie Mae failed to specify the specific date that Bracken defaulted on the note and mortgage; (7) Fannie Mae failed to provide a required notice of default and acceleration pursuant to the note; and (8) John Curio's affidavit is unauthenticated and inadmissible hearsay.  (ECF No. 80-1).  He does not argue that the purposes that Fannie Mae provided were impermissible, rather his argument stems from the belief that Fannie Mae did not own the note and mortgage and therefore could not have a permissible purpose.

In support of his argument, Bracken attached the note, a letter from an attorney of Bank of America, and an assignment of the mortgage.  (ECF No. 80).  The letter provides that Fannie Mae owns the note and mortgage.  *See* (ECF No. 80-3).  The letter states: "The current owner of

---

[13] Bracken attached a copy of an "unaltered note," arguing that the inconsistencies between the copies create genuine issues of material facts.  (ECF No. 80, p. 4-5).  The only inconsistencies between the copies is that on the Fannie Mae copy there is a black bar covering up "BRAC32S2517," apparently an identification number, and the signature of an employee of Coastal Mortgage Services, Inc. and stamps of Countrywide Home Loans, Inc.  The court does not find that these distinctions are material.  *See Anderson*, 477 U.S. at 247 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[14] As stated in footnote 4, the court finds this allegation contradicts Bracken's own statements.

the note is FNMA [(Fannie Mae)], with an address of 13150 World Gate Dr., Herndon, VA 20170. Bank of America is the servicer of the Loan."[15] (ECF No. 80-3, p. 4). The assignment states that Mortgage Electronic Registration Systems, Inc. assigned the mortgage to BAC Home Loans Servicing, LP.[16] (ECF No. 80-4). The assignment was dated September 7, 2010. (ECF No. 80-4).

Looking at the evidence in the light most favorable to Bracken, the court determines that there is not a genuine issue of material fact about the ownership of the note and mortgage. The letter from an attorney representing Bank of America that Bracken provided to the court states that Fannie Mae is the owner of the note. Moreover, Bracken's introduction of the assignment to BAC Home Loans in 2010 is not relevant as to whether Fannie Mae owned the note when it acquired the consumer reports in late 2011, 2012, and 2013.[17] As stated in Bracken's exhibit, Bank of America—the parent company of BAC Home Loans—stated that Fannie Mae is the owner of the loan, not Bank of America or BAC Home Loans. (ECF No. 80-3, p. 4). To defeat summary judgment in this regard, Bracken would have needed to come forth with "sufficient evidence supporting the claimed factual dispute," rather than "rest[ing] upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248 (quoting *Cities Serv. Co.*, 391 U.S. at

---

[15] In addition, Bracken attached a letter from Bank of America to his complaint in the other pending action concerning this property, in which Bank of America stated: "Please be advised that the true owner of this obligation is: Federal National Mortgage Association." *Bracken v. Bank of America*, 6:14-cv-01814, (EFC No. 1-3). *See* (ECF No. 84, p. 3) (informing the court of attachments Bracken made in his other action that contradict his statements in his memorandum in opposition to summary judgment).

[16] BAC Home Loans is a subsidiary of Bank of America. *See* (ECF No. 80-1, p. 9).

[17] The assignment was probably the result of the impending foreclosure action that was being brought against Bracken. According to Fannie Mae policy, "MERS must not be named as a plaintiff in any judicial action filed to foreclose on a mortgage owned or securitized by Fannie Mae." Fannie Mae Announcement 06-24 (Dec. 7, 2006). "Therefore, in most jurisdictions, the servicer will need to prepare a mortgage assignment from MERS to the servicer, and then bring the foreclosure in its own name." *Id.* The policy further states that the "assignment from MERS to the servicer should be in recordable form (e.g., executed and notarized) and, in some jurisdictions, it will need to be recorded." *Id.* The foreclosure action was filed on October 7, 2010. (ECF No. 84-1). MERS assigned the mortgage to BAC Home Loans Servicing, LP on September 7, 2010. (ECF No. 80-4). As Bank of America's lawyer stated, Bank of America is the servicer, and Fannie Mae is the owner of the note and mortgage. (ECF No. 80-3, p. 4). Although the court understands that mortgage industry practices may be confusing, a trial is only necessary if there are material factual disputes, not misunderstandings.

288-89).  Given that all the evidence, including evidence supplied by Bracken, indicates that Fannie Mae owns the note, and Bracken has introduced no evidence that it does not own the note, the court finds that his bare allegations do not create a genuine issue of material fact. *Mayweather*, 731 F.3d at 311 ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than *conclusory allegations*, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." (emphasis added)).  As the owner of a note that the borrower was in default on, Fannie Mae had a right to obtain copies of Bracken's consumer reports.  *See* 15 U.S.C. § 1618b; *see also Humphreys v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-06261, 2014 WL 348639, at * 2 (E.D. Pa. Jan. 30, 2014) (stating that as owner of the note, Fannie Mae had a permissible purpose to obtain a consumer report under the FCRA).

Nonetheless, even if Bracken could come forth with some evidence, other than mere allegations, showing that Fannie Mae was not the owner of the note, the court still determines that Fannie Mae is entitled to summary judgment.  Under Section 1681b, all that is required is that Fannie Mae had "reason to believe" that it had a permissible purpose to access Bracken's credit report, not that it was the actual owner of the account.  *See, e.g.*, *Stergiopoulos*, 427 F.3d at 1046-47; *Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269, 1276 (D. Md. 1996); *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1278-79 (D. Md. 1992), *aff'd* 989 F.2d 491 (4th Cir. 1993); *Zeller v. Samia*, 758 F. Supp. 775, 781-82 (D. Mass. 1991).

Fannie Mae acquires consumer reports on delinquent consumers for an array of purposes. (ECF Nos. 64-1, p. 3; 64-6, p. 2).  In his affidavit, Curcio states that Fannie Mae obtains credit reports for quality control, when loans become delinquent, and to provide loss mitigation and

foreclosure avoidance options.[18]  (ECF No. 64-6).  Bracken does not argue that the purposes put forth by Fannie Mae were impermissible, *see* (ECF 80-1), nor does he contest that those were not the actual purposes for obtaining his credit report.  In any event, the court finds these purposes are related to the "review or collection of an account" and are permissible.  *See, e.g.*, *Huertas*, 641 F.3d at 34 (holding that a permissible purpose existed for a lender to obtain a consumer report of a borrower even though collection of the debt was time barred by the statute of limitations); *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 187-88 (D.N.J. 2012) (holding that a permissible purpose existed for a charged off account); *Kortki*, 931 F. Supp. at 1276-77 (holding that obtaining a consumer report for the purposes of finding an address to serve the consumer on an account was a permissible purpose); *Zeller v. Samia*, 758 F. Supp. 775, 781 (D. Mass. 1991) (holding that a permissible purposes existed because the purpose for obtaining the consumer report was to verify a charge off or prepare for a civil proceeding about the property at issue in the loan).  Therefore, even assuming that Fannie Mae did not own the note and mortgage, its purpose in obtaining a consumer report was permissible because Fannie Mae had reason to believe plaintiff owed it a debt. *Kortki*, 931 F. Supp. at 1276.  Accordingly, the court grants Fannie Mae's motion for summary judgment.

### III. Bracken's IFP Status

The Report recommends denying Bracken's amended IFP application because Bracken failed to prove his IFP status.  (ECF No. 85, p. 3).  The magistrate judge determined after initially granting IFP status to Bracken that he actually owned a home, even though he answered on the application that he did "not own . . . real estate."  (ECF No. 85, p. 3).  At the hearing, after admitting he owned real property, Bracken then claimed to have no knowledge of the value of

---

[18] Fannie Mae obtained Bracken's credit reports during the time when the foreclosure action on the property was stayed for foreclosure intervention.  (ECF Nos. 1, 84-1).  The foreclosure action was stayed around November 16, 2011, and became active on April 9, 2014.  (ECF No. 84-1).

the residence, amount due on the mortgage, and any resulting equity. (ECF No. 85, p. 2). Based on that information, the magistrate judge determined Bracken failed to provide sufficient information and recommended denying his IFP application. (ECF No. 85, p. 3).

"In enacting the federal *in forma pauperis* statute [28 U.S.C. § 1915], Congress 'intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend and action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs' of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). Section 1915(a) "allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, *inter alia*, that he is unable to pay the costs of the lawsuit." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (superseded on other grounds).

"At the same time that it sought to lower judicial access barriers to the indigent, however, Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Denton*, 504 U.S. at 31 (quoting *Neitzke*, 490 U.S. at 324). "To prevent such abusive or captious litigation, § 1915(d) [requires] federal courts to dismiss a claim filed *in forma puaperis* 'if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.'" *Neitzke*, 490 U.S. at 324 (quoting 28 U.S.C. § 1915(d)).

Bracken's IFP application states that he does not have any gross wages or income. (ECF No. 76, p. 1). He states that the amount of money in his savings account is $369.28. (ECF No. 76, p. 2). Bracken attached a sworn affidavit of indigence to his objections to the Report. (ECF No. 89-1). In this affidavit, he attests that he is "without income of financial funds to pay any

costs related to this lawsuit." (ECF No. 89-1, p. 2). He further states that he is unemployed and receives SNAP or food stamps. (ECF No. 89-1, p. 2).

The court agrees with the magistrate judge that Bracken was far from forthcoming concerning the valuation of his house, amount due on the mortgage, and any resulting equity. Bracken states that someone from the clerk of court's office should have contacted him when they determined his amended IFP application was inadequate concerning the valuation information, and he would have provided the court with the information. (ECF No. 89, p. 3-4). Bracken, however, still has not provided the court with the information. He instead states that he "truly does not know these figures" and he has "no certifications or authority to evaluate real estate." (ECF No. 89, p. 5).[19] Thus, it is unclear whether he would have provided the information.

In his objections, Bracken argues "[t]he precedent that the Plaintiff should sell or borrow money upon his home to fund this legitimate lawsuit is utterly outrageous." (ECF No. 89, p. 5). Bracken further states "[t]he value of an applicant's home does not a [sic] determine *in forma pauperis* status in the Fourth Circuit." (ECF No. 89, p. 5). These arguments indicate to the court that Bracken has some equity in his house. Moreover, Bracken errs when he concludes that the home value is not a relevant factor when deciding whether to grant an IFP application. This error stems from the confusion that by providing this information, the court would require him to

---

[19] The court finds this suggestion disingenuous given that in his other action against Bank of America, he attached a letter stating that "As of October 29, 2010, you owe $94,856.78." *See Bracken v. Bank of America*, C/A No. 6:14-cv-01814, at ECF No. 21-2 (Date Filed July 10, 2014). Another letter from Bank of America states: "Enclosed for your records is a true and correct copy of Federal Truth-in Lending Disclosure Statement, Good Faith Estimate, Original Appraisal, HUD-1 Settlement Statement and Initial Uniform Residential Loan Application." *Id.* at ECF No. 1-2, p. 3. The letter also states that Bank of America attached a payment history. *Id.* at 2. Bracken received the documents. *See id.* at ECF No. 1-4, p. 1. Therefore, Bracken could have provided some documentation to permit the magistrate judge and the court to determine the equity in the house. Presumably, the amount due on the mortgage was also provided in the foreclosure action, and he probably could have acquired it upon a request from the servicer of the loan. Moreover, he could have provided the court with the value provided on the tax assessment of his property.

"live on the street or under the bridge." *See* (ECF No. 89, p. 5). Neither the court nor the magistrate judge has indicated that it would require Bracken to choose between living on the street and instituting the lawsuit or living in his home. The court believes that the IFP statute was enacted in part to avoid such a draconian choice. But that does not mean that the valuation of the house is irrelevant to the determination as to whether to grant an IFP application. Clearly if an IFP applicant owed multiple residences or had an extravagant house with sufficient equity, it would be entirely unfair to require the public to bear the cost for the suit. It appears Bracken may have been careless or evasive on his first IFP application and in his subsequent responses to the court. However, given the totality of the circumstances, including the pending foreclosure proceeding in state court, and in light of the court's ruling herein, the court will grant Bracken's application for IFP status in this case.[20]

Although Bracken is pro se and may not be familiar with legal documentation, the court would caution him that in the future he should exercise care in what he says and files with the court.[21]

---

[20] Given that the court's ruling on Fannie Mae's motion for summary judgment dismisses this action, the effect of this ruling is that Bracken will not have to pay the $400 filing fee. (ECF No. 85, p. 4).

[21] The documentation that Bracken has provided to the court in this action and in his action against Bank of America contradicts what he alleges in his discovery responses, affidavits, and memorandums to the court. *See Bracken v. Bank of America*, 6:14-cv-01814, at ECF No. 21, p. 2 (filed May 6, 2014) (admitting he is in default on his loan); *Id.* (ECF No. 1-3, p 3) (Letter from Bank of America stating that Fannie Mae is the owner of the note); *Id.* (ECF No. 1-8, p. 2) (Experian credit report providing Fannie Mae Identification number for the account on the note); *Id.* (ECF No. 1-9, p. 4) (Equifax credit report stating that the account is a "Fannie Mae account"). The purpose of the IFP statute is to ensure that federal courts do not have a financial barrier that prevents indigent people from instituting actions, not to permit litigants to tell one story in an action when it is beneficial to that action and another story in the other action when it suits that action. *Cf. Mullins v. Hallmark Data Systems, LLC*, 511 F. Supp. 2d 928, 941 (N.D. Ill. 2007) (("If [the applicant's] argument is that dismissal with prejudice cannot occur even in cases of intentional misrepresentations on the IFP form, so long as in the end the applicant is actually impoverished, it is an argument that has no support either in the text, the legislative history, or the cases construing § 1915. It would accord to *in forma pauperis* applicants a right to lie.").

### IV. Conclusion

Therefore, after a thorough review of the record in this case, the court finds that there is no genuine issue of material fact and that Fannie Mae is entitled to judgment as a matter of law. Accordingly, the court **GRANTS** Fannie Mae's motion for summary judgment (ECF No. 17). The court also **GRANTS** Bracken's application to proceed IFP (ECF No. 76). It is further **ORDERED** that Plaintiff's motion to amend/correct his complaint (ECF No. 91) is **DENIED** as moot.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

October 31, 2014
Anderson, South Carolina

### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.